EC1PREP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          14 CR 550 (PKC)

5   JOHN RE,

6              Defendant.

7   ------------------------------x

8                                     New York, N.Y.
                                      December 1, 2014
9                                     12:39 p.m.

10

    Before:
11
                       HON. P. KEVIN CASTEL,
12
                                          District Judge
13

14                          APPEARANCES

15

    PREET BHARARA,
16       United States Attorney for the
         Southern District of New York
17   BY:  ANDREW ADAMS
         Assistant United States Attorney
18
    CHRISTOPHER FLOOD
19   ANNALISA MIRON
         Attorneys for Defendant
20

21
    ALSO PRESENT:  MEREDITH SAVONA, FBI
22                 DETECTIVE BRETT CARLSON

23

24

25

EC1PREP

1              (In open court)

2              (Case called)

3              MR. ADAMS:  Good afternoon, your Honor.  Andrew Adams

4    for the United States, and with me at counsel table is Special

5    Agent Meredith Savona of the Federal Bureau of Investigations,

6    and Detective Brett Carlson of the Suffolk County Police

7    Department.

8              THE COURT:  All right.  Good afternoon to you all.

9    And for the defendant?

10             MS. MIRON:  Federal Defenders by Annalisa Miron and

11   Christopher Flood, on behalf of John Re.

12             THE COURT:  All right.  Good afternoon to both of you,

13   and afternoon, Mr. Re.

14             THE DEFENDANT:  Good afternoon.

15             THE COURT:  Mr. Re, I've been advised that you wish to

16   enter a plea of guilty to Count One of the indictment; is that

17   correct, sir?

18             THE DEFENDANT:  That's correct, your Honor.

19             THE COURT:  All right.  Before I can accept the guilty

20   plea from you, I must satisfy myself that you understand the

21   rights you would have if this case went to trial and the rights

22   you're giving up by pleading guilty.  Also, that there's a

23   factual basis for your plea of guilty and that you understand

24   the consequences of pleading guilty.

25             So in a minute I'm going to have the clerk administer

EC1PREP

1  the oath to you.  After I administer the oath, I'm going to

2  inform you of certain rights and ask you certain questions.  If

3  I ask you something or I tell you something and you don't quite

4  understand, please let me know, and I'll put it into different

5  words.  Also, if at any time today you wish to speak in private

6  with your lawyers, I'll give you an opportunity to do that.  Do

7  you understand all of that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  Please stand and the clerk

10  will administer the oath.

11          (Defendant sworn)

12          THE COURT:  All right.  Please state your full name

13  for the record.

14          THE DEFENDANT:  John Darren Re.

15          THE COURT:  All right.  You are under oath, Mr. Re,

16  and your answers to my questions are subject to the penalties

17  of perjury or of making a false statement if you do not answer

18  truthfully.  Also, any statement you make today may be used in

19  any such prosecution.  Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  How old are you?

22          THE DEFENDANT:  54.

23          THE COURT:  How far did you go in school?

24          THE DEFENDANT:  I got my G.E.D.

25          THE COURT:  All right.  Are you now or have you

EC1PREP

1       recently been under the care of a medical doctor?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  For what condition?

4              THE DEFENDANT:  Dissociative identity disorder.

5              THE COURT:  All right.  And do you take any

6       medications for that?

7              THE DEFENDANT:  I take three different kinds of

8       medications.

9              THE COURT:  And what are those medications?

10             THE DEFENDANT:  Klonopin, Latuda and Seroquel.

11             THE COURT:  All right.  Do they affect the clarity of

12      your thinking?

13             THE DEFENDANT:  Sometimes they make things more clear.

14             THE COURT:  All right.  How do you feel today?

15             THE DEFENDANT:  Nervous.

16             THE COURT:  Is your mind clear?

17             THE DEFENDANT:  I hear what you're saying.

18             THE COURT:  Well, that's a somewhat different

19      question.

20             THE DEFENDANT:  I understand.

21             THE COURT:  Pardon me?

22             THE DEFENDANT:  I understand.

23             THE COURT:  But would you prefer to adjourn this

24      proceeding to another day?

25             THE DEFENDANT:  No, sir.

EC1PREP

1          THE COURT:  You say sometimes the medication makes you

2    think more clearly.  Are you taking the medication on a regular

3    basis?

4          THE DEFENDANT:  Yes, I have been.

5          THE COURT:  All right.  And you did, in fact, take

6    your medication on schedule prior to coming here today?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And is your mind clear today?

9          THE DEFENDANT:  I understand what's being said

10   clearly.

11         THE COURT:  All right.  And are you able to process

12   what's being said to you?

13         THE DEFENDANT:  Yes.

14         THE COURT:  All right.  Have you ever been treated for

15   any other mental illness?

16         THE DEFENDANT:  Yes.

17         THE COURT:  What other mental illness?

18         THE DEFENDANT:  I have been committed, and I don't

19   remember what the diagnoses was.

20         THE COURT:  How long ago were you committed?

21         THE DEFENDANT:  First time was in the '80s.  The

22   second time was in the '90s somewhere.  I have no recollection

23   of the actual year.

24         THE COURT:  All right.  And approximately how long

25   were each of those commitments?

EC1PREP

```
 1              THE DEFENDANT:  Weeks.
 2              THE COURT:  All right.  And when you say weeks, was it
 3     less than a month?
 4              THE DEFENDANT:  One was a little more, one was less.
 5              THE COURT:  All right.  Okay.  Do you have any other
 6     conditions, physical or mental?
 7              THE DEFENDANT:  No.
 8              THE COURT:  All right.  Let me inquire of Ms. Miron.
 9     You've had occasion to communicate with your client from time
10     to time.  Do you have a view as to whether or not he is
11     competent to enter an informed plea today?
12              MS. MIRON:  Your Honor, Mr. Flood and I have
13     communicated extensively with Mr. Re.  We are confident that he
14     is competent to enter the plea.
15              THE COURT:  All right.  And, Mr. Flood, your
16     observations, sir?
17              MR. FLOOD:  Your Honor, I concur completely with
18     Ms. Miron.
19              THE COURT:  All right.  And is the government aware of
20     any reason why this Court should not find Mr. Re competent to
21     enter an informed plea?
22              MR. ADAMS:  No, your Honor.
23              THE COURT:  All right.  Based upon my observations of
24     Mr. Re, the statement of his counsel, his responses to my
25     questions, I find that he is fully competent to enter an
```

7

EC1PREP

1    informed plea.

2              Now, Mr. Re, have you, in fact, discussed the charges

3    against you with your lawyers, Miss Miron and Mr. Flood?

4              THE DEFENDANT:  Yes, I have.

5              THE COURT:  Have you had enough time to consider all

6    of your options in this case?

7              THE DEFENDANT:  Yes, I have.

8              THE COURT:  Are you satisfied with your lawyers'

9    representation of you?

10             THE DEFENDANT:  Yes, I am.

11             THE COURT:  All right.  I'm now going to explain to

12   you the rights that you would have if this case went to trial

13   and the rights you are giving up by pleading guilty.  Under the

14   Constitution and laws of the United States, you are entitled to

15   a speedy and public trial by an impartial jury on the charges

16   contained in the indictment.  Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  At such a trial, you would not have to

19   prove that you were innocent.  The government would be required

20   to prove each element of each crime by proof beyond a

21   reasonable doubt before you could be found guilty.  A jury of

22   12 people would have to agree unanimously that you were guilty.

23   Do you understand all that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  If there were a trial, at every stage of

EC1PREP

your case, you would be entitled to be represented by a lawyer, and if you could not afford a lawyer, one would be appointed at public expense.  Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  If there were a trial, the witnesses for the government would have to come to court to testify.  You would be able to see and hear them.  Your lawyer could question them through cross-examination.  Your lawyer could object to evidence presented by the government.  Your lawyer could present evidence and could ask the Court to compel witnesses to appear at trial on your behalf.  Do you understand all of that?

THE DEFENDANT:  Yes, I do.

THE COURT:  If there were a trial, you would have the right to testify, if you chose to do so.  You could come up here and take the witness stand.  Also, you would have the right not to testify, and no one would be permitted to draw any inference or suggestion of guilt from the fact that you decided not to testify.  Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  If there were a trial and the jury found you guilty, you would have a right to appeal that finding.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, those are the rights you would have if you went to trial.  If you plead guilty and I accept that

EC1PREP

1    guilty plea, there will be no trial.  You will proceed to the

2    sentencing phase in which the Court will determine the

3    punishment to be imposed upon you.  You will have a right to an

4    attorney throughout that process.  Do you understand all that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Even now, you have the right to change

7    your mind.  Instead of pleading guilty, you may plead not

8    guilty and go to trial.  Do you wish to plead not guilty and go

9    to trial?

10             THE DEFENDANT:  No.

11             THE COURT:  All right.  Do you understand that you are

12   charged in Count One of the indictment with the crime of wire

13   fraud and that the maximum penalty for that crime is 20 years'

14   imprisonment, three years' supervised release, a maximum fine

15   of the greatest of $250,000 or twice the gross monetary or

16   pecuniary gain derived from the offense or twice the gross

17   pecuniary loss to persons other than yourself resulting from

18   the offense and a $100 mandatory special assessment.  Do you

19   understand all of that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  In addition, the Court must order that you

22   make restitution to any person who I find was injured by reason

23   of your conduct.  Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Miss Miron, is your client intending to

EC1PREP

1    admit the forfeiture allegations in paragraphs 2 and 3 today?

2              MS. MIRON:  He is.

3              THE COURT:  All right.  Thank you.

4              Now, I mentioned that in addition to a maximum penalty

5    of 20 years' imprisonment, there is also the possibility of

6    three years' supervised release, and supervised release governs

7    the period after you complete a term of imprisonment.

8              So say you receive a prison term, followed by a term

9    of three years' supervised release, and you live up to the

10   terms of supervised release for two years, but then you violate

11   one of the terms, you can be returned to prison for a full

12   period of three years.  Do you understand that, sir?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  Are you a United States citizen?

15             THE DEFENDANT:  Yes, I am.

16             THE COURT:  One of the consequences of pleading guilty

17   is that you may give up other valuable civil rights, such as

18   the right to vote, to hold public office, to sit on a jury, to

19   possess a firearm, to hold certain licenses, to obtain certain

20   government benefits.  Do you understand all that?

21             THE DEFENDANT:  Yes, I do.

22             THE COURT:  Are you serving any other sentence, state

23   or federal, or being prosecuted in any other court for any

24   other crime?

25             THE DEFENDANT:  No.

EC1PREP

1              MS. MIRON:  Your Honor, just one moment.

2              THE COURT:  Sure.

3              (Pause)

4              THE DEFENDANT:  Your Honor, there is one other thing

5      that I didn't think about as criminal, it's the tax evasion

6      charge like from the State, and I have to deal with them with

7      that.  I haven't negotiated anything with them yet, but that

8      will come in the future.

9              THE COURT:  All right.  The important thing for you to

10     understand, Mr. Re, is any punishment you receive from that

11     case is wholly separate and apart from any punishment you

12     receive in this case.

13             This Court will impose a sentence on you, and that

14     sentence will have nothing to do with the State Court sentence.

15     There will be no credit, no concurrent term or the like from

16     this court, and you should understand that.  Do you understand

17     that, sir?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  In sentencing you, I will receive a

20     presentence report prepared by the Office of Probation that

21     gives me background information and a recommended range of

22     sentence under the sentencing guidelines.

23             After hearing from your lawyers and from the

24     government, I will make my own determination of the correct

25     guideline range that applies in this case.  Even after

EC1PREP

1    determining the correct guideline range, I need not follow it

2    and can sentence you all the way up to the statutory maximum.

3              The guidelines are advisory, and they are not binding

4    on the Court.  They are one of the factors that the Court takes

5    account of under the sentencing statute, which is commonly

6    known as section 3553(a).  Do you understand all that?

7              THE DEFENDANT:  I understand what you're saying.

8              THE COURT:  All right.  And have you discussed how

9    sentencing works with your lawyers?

10             THE DEFENDANT:  Yes, some.  Somewhat, yes.

11             THE COURT:  All right.  Do you have any questions for

12   me on the sentencing process?

13             THE DEFENDANT:  I don't know, your Honor.  It's a lot

14   for me.  I'm just trying to --

15             THE COURT:  All right.  Well, why don't we take a

16   five-minute recess, and you can discuss this with your lawyers.

17   And if you have any questions for me, I'd be pleased to answer

18   them.  All right?

19             THE DEFENDANT:  Thank you.

20             THE COURT:  So let's take five minutes.

21             (Recess)

22             THE COURT:  All right.  Please be seated.  We took a

23   little bit longer recess, but my question is now, Mr. Re, have

24   you had a chance to speak with your lawyers, and have you, in

25   fact, spoken with your lawyers on the subject of how sentencing

13

EC1PREP

1    works?

2              THE DEFENDANT:  Yes, I have.

3              THE COURT:  All right.  Do you have any questions for

4    me at this stage?

5              THE DEFENDANT:  At this stage, no, your Honor.

6              THE COURT:  All right.  If at any point today you have

7    any questions for me, I would very much appreciate it if you

8    would just tell me, and I will do my best to answer the

9    question.

10             THE DEFENDANT:  Okay.

11             THE COURT:  All right.  Now, I understand there's been

12   a plea agreement between you and the government, and that it is

13   set forth in a six-page letter agreement on the letterhead of

14   the U.S. Department of Justice dated November 19, 2014, and

15   addressed to Annalisa Miron.  I'm going to ask the clerk to

16   place that document in front of you.  And the question is:  Is

17   that your plea agreement with the government?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right.  Is that your signature on the

20   last page?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Did you read the plea agreement before you

23   signed it?

24             THE DEFENDANT:  I had read it earlier.

25             THE COURT:  Yes.  And did you discuss it with your

EC1PREP

1      lawyer before you signed it?

2                THE DEFENDANT:  Yes.

3                THE COURT:  Did you ask questions about it before you

4      signed it?

5                THE DEFENDANT:  Yes.

6                THE COURT:  Did you understand it before you signed

7      it?

8                THE DEFENDANT:  Maybe not as well as a lawyer, but I

9      understood it in a layman's terms.

10                THE COURT:  All right.  Has anyone threatened you or

11      forced you in any way to enter into the plea agreement or to

12      plead guilty?

13                THE DEFENDANT:  No.

14                THE COURT:  Has anyone given you anything of value,

15      any inducements to enter into the plea agreement or to plead

16      guilty?

17                THE DEFENDANT:  No.

18                THE COURT:  Does the plea agreement contain all of

19      your understandings with the government?

20                THE DEFENDANT:  Yes.

21                THE COURT:  All right.  Let me ask Ms. Miron, if you

22      would kindly state for the record the review process.

23                MS. MIRON:  Yes, your Honor.  Mr. Re, who lives in

24      East Hampton came to our office last week.  We discussed the

25      plea agreement.  He read it.  I discussed it with him, reviewed

EC1PREP

1    the important provisions, asked if there were any questions.

2    He did have some questions, and we answered those.  So I'm

3    confident that he understands the provisions in the plea

4    agreement.

5             THE COURT:  Thank you.  I want you to know, Mr. Re,

6    that any prediction, calculation or estimate that anyone has

7    made to you, including your own lawyers, as to what sentence

8    the Court may give you is not binding on the Court, and if it

9    turns out to be wrong, you will not be permitted to withdraw

10   your guilty plea.  Do you understand that?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Now, one of the features of your agreement

13   with the government is that you and the government have agreed

14   on a stipulated guideline range that applies in this case and,

15   indeed, that stipulated guideline range, insofar as it relates

16   to imprisonment, is a range of 37 months' to 46 months'

17   imprisonment.  Is that correct?

18            THE DEFENDANT:  To my knowledge, yes.

19            THE COURT:  All right.  That agreement is binding on

20   you and it's binding on the government, but it's not binding on

21   the Court.  As I said to you before, I have my own duty to

22   calculate the guidelines that apply in your case and even after

23   determining those guidelines, I need not follow them.  I can

24   sentence all the way up to the statutory maximum.

25            One of the features of your plea agreement with the

EC1PREP

1    government is that if I should sentence you within the

2    stipulated guideline range set forth in the plea agreement, 37

3    to 46 months or above that range, the government has agreed not

4    to appeal the sentence.  But you have agreed that if I sentence

5    you to a term of 37 months' imprisonment or anything up to 46

6    months' imprisonment, that you will -- or if I sentence you

7    below that range, so if I sentence you to something less than

8    37 months in prison, that you will not appeal or collaterally

9    attack the sentence in any other proceeding.

10          So in other words, you have waived your right to

11   appeal a sentence, unless the sentence is more than 46 months'

12   imprisonment, the imprisonment part is more than 46 months and,

13   in that event, the law will only allow you to appeal on the

14   basis that the sentence is unreasonable or contrary to law.  Do

15   you understand all of that?

16          THE DEFENDANT:  Yes, I do.

17          THE COURT:  All right.  Do you have any questions

18   about any of that?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Okay.  Now, I'm going to have the

21   government attorney set forth the elements of the crime to

22   which you have offered to plead guilty, and these are the

23   elements that the government must prove beyond a reasonable

24   doubt, and I will also ask the government to tell me how the

25   government would go about proving the case.

EC1PREP

1              MR. ADAMS:  Your Honor, with respect to the elements

2      of wire fraud, there are three.  First, that there was a scheme

3      or artifice to defraud or to obtain money or property by

4      materially false and fraudulent pretenses, representations or

5      promises; second, that the defendant knowingly and willfully

6      participated in that scheme or artifice to defraud with

7      knowledge of its fraudulent nature and specific intent to

8      defraud; and, third, that in the execution of that scheme, the

9      defendant used or caused the use of interstate wires.

10             Were this case to go to trial, the nature of the

11     government's testimony and evidence would be as follows:

12     First, witness testimony regarding the Schulte household, that

13     is the household at which Mr. Re claims to have found a large

14     trove of purportedly very valuable paintings.  What we would

15     put on would be testimony from numerous witnesses, as well as

16     documents from the estate of George Schulte demonstrating that

17     no such paintings were ever in that house and that provenance

18     for those paintings was fabricated.

19             Second, and perhaps the most voluminous part of the

20     government's case, would be e-mail correspondence between

21     Mr. Re and others demonstrating, among other things, his

22     attempt to sell those paintings and such paintings using the

23     fabricated provenance, his attempt to have others engage in

24     what we would call shell bidding.  That is, to go onto online

25     auction sites and to raise the public price of these paintings

EC1PREP

by putting bids on the painting that the bidder had no

intention of actually paying for the purpose of increasing the

perception of value.

        We would also be putting on e-mail evidence

demonstrating Mr. Re's repeated use of the false provenance.

We would put on the result of expert testing of approximately

of over 40 different Jackson Pollack paintings, which uniformly

came back negative, as well as recordings of Mr. Re and his

victims discussing those test results at a time before Mr. Re

ceased attempting to sell Jackson Pollacks using the same

provenance.  Thank you.

        THE COURT:  Mr. Re, please tell me in your own words

what you did that leads you to believe that you are guilty of

the crime charged in Count One of the indictment?

        THE DEFENDANT:  Yes, sir.  Sometime not too long

before 2005, I acquired artwork that I bought in a storage unit

in Manhattan.  I was not given any information as to the origin

of the artwork from the storage unit manager.  Being a

woodworker at the time, I had several people with expertise

view the artwork.  They told me that it was possibly attributed

to Jackson Pollack and William DeKooning.

        Previous to that, I had been employed at a shop that

was previously owned by George Schulte before he had died in

1996, of East Hampton Springs, New York, who I thought possibly

knew Jackson Pollack in the late '40s and early '50s.  I

1    thought to represent to the buyers that the artwork came from

2    the George Schulte basement, being a feasible origin, even

3    though, in fact, it did not.  I knew the buyers would purchase

4    the artwork with more confidence having, given it a possible

5    provenance, that it had the possibilities of giving a

6    connection to the artist.

7            There were several buyers who purchased artwork

8    through eBay and PayPal, also.

9            Your Honor, I'm not going to sit here and claim that

10   making up the Schulte provenance was out of ignorance.  It was

11   out of arrogance, and my misconduct has brought shame to my

12   family and myself, and I hurt other people.  Mostly, I think

13   about the people that are angry that have spent money, and I

14   want to make it better.  I don't know if I can.  I don't expect

15   by saying that I'm sorry will make a difference.  However, in

16   my heart, I'm more than sorry.

17           Some of my family has not spoken to me since I've

18   gotten in trouble, and that has hurt me almost as deeply as the

19   people that bought the pieces.  I want to make it better.  I

20   even went so far as to, when I had the ability, I wanted to

21   give collector No. 1 back what he had paid, but he didn't want

22   to give the pieces back.  And I still want to try and do

23   whatever I can to take responsibility for what I did.

24           THE COURT:  Thank you, Mr. Re.  Let me hear from the

25   government on venue.

EC1PREP

1          MR. ADAMS:  Yes, your Honor.  Venue in this case is

2     founded on a number of things, primarily, the location of

3     several of the fraudulent artworks having come to Manhattan for

4     inspection by various victims, or potential victims, as well as

5     meetings between Mr. Re and potential victims that occurred in

6     Manhattan.

7          With respect to interstate wires and its connection to

8     venue as well --

9          THE COURT:  Yes.

10          MR. ADAMS:  -- Mr. Re caused wires to be sent from

11     Colorado and outside of New York to a representative of a

12     potential victim here in Manhattan in furtherance of the

13     scheme.

14          THE COURT:  All right.  Mr. Re, did you, in fact, meet

15     with one of the victims or potential victims in Manhattan in

16     connection with this criminal activity?

17          THE DEFENDANT:  Not that I recall, your Honor.

18          MS. MIRON:  Just one moment, your Honor.

19          THE COURT:  Yes.

20          MS. MIRON:  Just one moment.

21          THE COURT:  Take your time.

22          (Pause)

23          MS. MIRON:  Your Honor, I just had to clarify some

24     facts with the government, but yes, Mr. Re is prepared to talk

25     about the meeting.

EC1PREP

| | |
|---|---|
| 1 | THE DEFENDANT:  There was a meeting in Manhattan, but |
| 2 | it wasn't run by me, but it was concerning the Pollacks. |
| 3 | THE COURT:  Were you present during the meetings? |
| 4 | THE DEFENDANT:  The first meeting, no, I was not. |
| 5 | THE COURT:  Was there a second meeting? |
| 6 | THE DEFENDANT:  There was a second meeting done by |
| 7 | Steve Fisher Security's guy -- man, and I was present during |
| 8 | that meeting. |
| 9 | THE COURT:  All right.  And that was in Manhattan? |
| 10 | THE DEFENDANT:  Yes, I was there with Leo Mangan. |
| 11 | THE COURT:  All right.  And in connection with one of |
| 12 | the victims, did you cause an e-mail to be sent from someplace |
| 13 | in Colorado into New York regarding the transactions? |
| 14 | THE DEFENDANT:  Leo Mangan is from Colorado, and we |
| 15 | have e-mailed each other a lot. |
| 16 | THE COURT:  All right.  Okay.  And that was in |
| 17 | connection with this criminal scheme? |
| 18 | THE DEFENDANT:  Yes. |
| 19 | THE COURT:  All right.  Does the government agree |
| 20 | there's a sufficient factual predicate for a plea of guilty? |
| 21 | MR. ADAMS:  There is, your Honor.  I do agree.  There |
| 22 | is one further relatively unusual provision in the plea |
| 23 | agreement that is a factual stipulation.  I believe that what |
| 24 | Mr. Re has allocuted to satisfies that portion of the plea |
| 25 | agreement as well, but I'd just like to put the stipulation in |

EC1PREP

1    the record to confirm that.

2             The stipulations are as follows, that at no time has

3    Mr. Re ever discovered or sold any work of art found in the

4    basement of the home formerly belonging to George and Barbara

5    Schulte; and that he knowingly and fraudulently fabricated the

6    provenance for every work of art for which he claimed that the

7    provenance included prior ownership by George or Barbara

8    Schulte.  Thank you, your Honor.

9             THE COURT:  Mr. Re, those statements that the

10   government prosecutor just read, are they correct?

11            THE DEFENDANT:  Yes.

12            THE COURT:  And do you agree to them?

13            THE DEFENDANT:  Yes.

14            THE COURT:  All right.  Does defense counsel agree

15   that there's a sufficient factual predicate for a plea of

16   guilty in this case?

17            MS. MIRON:  Yes.

18            THE COURT:  Does defense counsel agree that there is a

19   basis for venue in this case?

20            MS. MIRON:  Yes.

21            THE COURT:  Does defense counsel agree that the

22   interstate wire requirement is satisfied in this case and the

23   interstate commerce requirement?

24            MS. MIRON:  Yes.

25            THE COURT:  All right.  Mr. Re, do you have any

EC1PREP

1    questions for me?

2               THE DEFENDANT:  No, sir.

3               THE COURT:  With regard to the charge in Count One of

4    the indictment, how do you plead, guilty or not guilty?

5               THE DEFENDANT:  Guilty.

6               THE COURT:  With regard to the forfeiture allegations

7    in paragraphs 2 and 3 of the indictment, do you admit those

8    allegations, or do you deny those allegations?

9               THE DEFENDANT:  I admit them.

10              THE COURT:  Based upon your responses to my questions

11   and my observations of your demeanor, I find that you know your

12   rights, you know the consequences of pleading guilty, and

13   there's a factual basis for your plea of guilty.  Your plea of

14   guilty and your admission of the forfeiture allegations are

15   accepted.

16              Further, I find that the plea agreement was knowingly

17   and voluntarily entered into, and specifically that you

18   knowingly and voluntarily entered into the waiver provision

19   which waives your right to appeal or collaterally attack a

20   sentence under certain circumstances.

21              I will order a presentence investigation and report

22   and direct that no interview of you take place unless your

23   lawyer is present.  It's important you be candid and truthful

24   with the people who prepare the presentence report.  Tell them

25   the good things and the not-so-good things.  The report will be

EC1PREP

1    important in my decision on sentencing.

2             Before the day of sentencing, you will have the

3    opportunity to review the report.  I urge you to go through it

4    carefully.  If there are any mistakes, point them out to your

5    lawyer so that she can point them out to me.  Sentencing in

6    this case is set for April 10th, 2015, at 2:00 p.m.  Any

7    objection to bail continuing until sentencing?

8             MR. ADAMS:  No objection, your Honor.

9             THE COURT:  All right.  Mr. Re, you must be present

10   for sentencing on April 10th, 2015, at 2:00 p.m. or any adjourn

11   date of the sentencing, or you will be guilty of a separate

12   crime, bail jumping, and subject to imprisonment for up to five

13   years and a $250,000 fine, in addition to any punishment that

14   you would receive for the crime for which you've just pled

15   guilty.  Do you understand that, sir?

16            THE DEFENDANT:  Yes.

17            THE COURT:  All right.  Anything further from the

18   government?

19            MR. ADAMS:  No, your Honor.  Thank you.

20            THE COURT:  From the defendant?

21            MS. MIRON:  No, your Honor.  Thank you.

22            THE COURT:  Thank you all very much.

23            (Adjourned)

24

25