ECIPREP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK

2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                    v.                    14 CR 550 (PKC)

5    JOHN RE,

6                    Defendant.

7    ------------------------------x

8                                     New York, N.Y.
                                      December 1, 2014
9                                     12:39 p.m.

10

11   Before:

12                  HON. P. KEVIN CASTEL,

13                                     District Judge

14                  APPEARANCES

15   PREET BHARARA,
         United States Attorney for the
16       Southern District of New York
     BY:  ANDREW ADAMS
17       Assistant United States Attorney

18   CHRISTOPHER FLOOD
     ANNALISA MIRON
19       Attorneys for Defendant

20

21   ALSO PRESENT:  MEREDITH SAVONA, FBI

22   DETECTIVE BRETT CARLSON

23

24

25

1      (In open court)

2      (Case called)

3          MR. ADAMS:  Good afternoon, your Honor.  Andrew Adams

4      for the United States, and with me at counsel table is Special

5      Agent Meredith Savona of the Federal Bureau of Investigations,

6      and Detective Brett Carlson of the Suffolk County Police

7      Department.

8          THE COURT:  All right.  Good afternoon to you all.

9      And for the defendant?

10         MS. MIRON:  Federal Defenders by AnnaLisa Miron and

11     Christopher Flood, on behalf of John Re.

12         THE COURT:  All right.  Good afternoon to both of you,

13     and afternoon, Mr. Re.

14         THE DEFENDANT:  Good afternoon.

15         THE COURT:  Mr. Re, I've been advised that you wish to

16     enter a plea of guilty to Count One of the indictment; is that

17     correct, sir?

18         THE DEFENDANT:  That's correct, your Honor.

19         THE COURT:  All right.  Before I can accept the guilty

20     plea from you, I must satisfy myself that you understand the

21     rights you would have if this case went to trial and the rights

22     you're giving up by pleading guilty.  Also, that there's a

23     factual basis for your plea of guilty and that you understand

24     the consequences of pleading guilty.

25         So in a minute I'm going to have the clerk administer

BCLPREP

3

```
1     the oath to you.  After I administer the oath, I'm going to
2     inform you of certain rights and ask you certain questions.  If
3     I ask you something or I tell you something and you don't quite
4     understand, please let me know, and I'll put it into different
5     words.  Also, if at any time today you wish to speak in private
6     with your lawyers, I'll give you an opportunity to do that.  Do
7     you understand all of that?
8                 THE DEFENDANT:  Yes, sir.
9                 THE COURT:  All right.  Please stand and the clerk
10    will administer the oath.
11                 (Defendant sworn)
12                 THE COURT:  All right.  Please state your full name
13    for the record.
14                 THE DEFENDANT:  John Darren Re.
15                 THE COURT:  All right.  You are under oath, Mr. Re,
16    and your answers to my questions are subject to the penalties
17    of perjury or of making a false statement if you do not answer
18    truthfully.  Also, any statement you make today may be used in
19    any such prosecution.  Do you understand that?
20                 THE DEFENDANT:  Yes, sir.
21                 THE COURT:  How old are you?
22                 THE DEFENDANT:  54.
23                 THE COURT:  How far did you go in school?
24                 THE DEFENDANT:  I got my G.E.D.
25                 THE COURT:  All right.  Are you now or have you
```

```
 1   recently been under the care of a medical doctor?
 2            THE DEFENDANT:  Yes, sir.
 3            THE COURT:  For what condition?
 4            THE DEFENDANT:  Dissociative identity disorder.
 5            THE COURT:  All right.  And do you take any
 6   medications for that?
 7            THE DEFENDANT:  I take three different kinds of
 8   medications.
 9            THE COURT:  And what are those medications?
10            THE DEFENDANT:  Klonopin, Latuda and Seroquel.
11            THE COURT:  All right.  Do they affect the clarity of
12   your thinking?
13            THE DEFENDANT:  Sometimes they make things more clear.
14            THE COURT:  All right.  How do you feel today?
15            THE DEFENDANT:  Nervous.
16            THE COURT:  Is your mind clear?
17            THE DEFENDANT:  I hear what you're saying.
18            THE COURT:  Well, that's a somewhat different
19   question.
20            THE DEFENDANT:  I understand.
21            THE COURT:  Pardon me?
22            THE DEFENDANT:  I understand.
23            THE COURT:  But would you prefer to adjourn this
24   proceeding to another day?
25            THE DEFENDANT:  No, sir.
```

5

ECDFBEB

```
 1    THE COURT:  You say sometimes the medication makes you
 2    think more clearly.  Are you taking the medication on a regular
 3    basis?
 4    THE DEFENDANT:  Yes, I have been.
 5    THE COURT:  All right.  And you did, in fact, take
 6    your medication on schedule prior to coming here today?
 7    THE DEFENDANT:  Yes.
 8    THE COURT:  And is your mind clear today?
 9    THE DEFENDANT:  I understand what's being said
10    clearly.
11    THE COURT:  All right.  And are you able to process
12    what's being said to you?
13    THE DEFENDANT:  Yes.
14    THE COURT:  All right.  Have you ever been treated for
15    any other mental illness?
16    THE DEFENDANT:  Yes.
17    THE COURT:  What other mental illness?
18    THE DEFENDANT:  I have been committed, and I don't
19    remember what the diagnosis was.
20    THE COURT:  How long ago were you committed?
21    THE DEFENDANT:  First time was in the '80s.  The
22    second time was in the '90s somewhere.  I have no recollection
23    of the actual year.
24    THE COURT:  All right.  And approximately how long
25    were each of those commitments?
```

1       THE DEFENDANT:  Weeks.

2       THE COURT:  All right.  And when you say weeks, was it

3   less than a month?

4       THE DEFENDANT:  One was a little more, one was less.

5       THE COURT:  All right.  Okay.  Do you have any other

6   conditions, physical or mental?

7       THE DEFENDANT:  No.

8       THE COURT:  All right.  Let me inquire of Ms. Miron.

9   You've had occasion to communicate with your client from time

10   to time.  Do you have a view as to whether or not he is

11   competent to enter an informed plea today?

12       MS. MIRON:  Your Honor, Mr. Flood and I have

13   communicated extensively with Mr. Re.  We are confident that he

14   is competent to enter the plea.

15       THE COURT:  All right.  And, Mr. Flood, your

16   observations, sir?

17       MR. FLOOD:  Your Honor, I concur completely with

18   Ms. Miron.

19       THE COURT:  All right.  And is the government aware of

20   any reason why this Court should not find Mr. Re competent to

21   enter an informed plea?

22       MR. ADAMS:  No, your Honor.

23       THE COURT:  All right.  Based upon my observations of

24   Mr. Re, the statement of his counsel, his responses to my

25   questions, I find that he is fully competent to enter an

ECJRREP

1    informed plea.

2    Now, Mr. Re, have you, in fact, discussed the charges

3    against you with your lawyers, Miss Miron and Mr. Flood?

4    THE DEFENDANT: Yes, I have.

5    THE COURT: Have you had enough time to consider all

6    of your options in this case?

7    THE DEFENDANT: Yes, I have.

8    THE COURT: Are you satisfied with your lawyers'

9    representation of you?

10    THE DEFENDANT: Yes, I am.

11    THE COURT: All right. I'm now going to explain to

12    you the rights that you would have if this case went to trial

13    and the rights you are giving up by pleading guilty. Under the

14    Constitution and laws of the United States, you are entitled to

15    a speedy and public trial by an impartial jury on the charges

16    contained in the indictment. Do you understand that?

17    THE DEFENDANT: Yes.

18    THE COURT: At such a trial, you would not have to

19    prove that you were innocent. The government would be required

20    to prove each element of each crime by proof beyond a

21    reasonable doubt before you could be found guilty. A jury of

22    12 people would have to agree unanimously that you were guilty.

23    Do you understand all that?

24    THE DEFENDANT: Yes.

25    THE COURT: If there were a trial, at every stage of

BCLDREB

1   your case, you would be entitled to be represented by a lawyer,

2   and if you could not afford a lawyer, one would be appointed at

3   public expense. Do you understand all of that?

4       THE DEFENDANT: Yes.

5       THE COURT: If there were a trial, the witnesses for

6   the government would have to come to court to testify. You

7   would be able to see and hear them. Your lawyer could question

8   them through cross-examination. Your lawyer could object to

9   evidence presented by the government. Your lawyer could

10  present evidence and could ask the Court to compel witnesses to

11  appear at trial on your behalf. Do you understand all of that?

12      THE DEFENDANT: Yes, I do.

13      THE COURT: If there were a trial, you would have the

14  right to testify, if you chose to do so. You could come up

15  here and take the witness stand. Also, you would have the

16  right not to testify, and no one would be permitted to draw any

17  inference or suggestion of guilt from the fact that you decided

18  not to testify. Do you understand all of that?

19      THE DEFENDANT: Yes.

20      THE COURT: If there were a trial and the jury found

21  you guilty, you would have a right to appeal that finding. Do

22  you understand that?

23      THE DEFENDANT: Yes.

24      THE COURT: Now, those are the rights you would have

25  if you went to trial. If you plead guilty and I accept that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1    guilty plea, there will be no trial.  You will proceed to the
 2    sentencing phase in which the Court will determine the
 3    punishment to be imposed upon you.  You will have a right to an
 4    attorney throughout that process.  Do you understand all that?
 5            THE DEFENDANT:  Yes.
 6            THE COURT:  Even now, you have the right to change
 7    your mind.  Instead of pleading guilty, you may plead not
 8    guilty and go to trial.  Do you wish to plead not guilty and go
 9    to trial?
10            THE DEFENDANT:  No.
11            THE COURT:  All right.  Do you understand that you are
12    charged in Count One of the indictment with the crime of wire
13    fraud and that the maximum penalty for that crime is 20 years'
14    imprisonment, three years' supervised release, a maximum fine
15    of the greatest of $250,000 or twice the gross monetary or
16    pecuniary gain derived from the offense or twice the gross
17    pecuniary loss to persons other than yourself resulting from
18    the offense and a $100 mandatory special assessment.  Do you
19    understand all of that?
20            THE DEFENDANT:  Yes.
21            THE COURT:  In addition, the Court must order that you
22    make restitution to any person who I find was injured by reason
23    of your conduct.  Do you understand that?
24            THE DEFENDANT:  Yes.
25            THE COURT:  Miss Miron, is your client intending to
```

BCLPREP

```
 1            admit the forfeiture allegations in paragraphs 2 and 3 today?
 2            MS. MIRON:  He is.
 3            THE COURT:  All right.  Thank you.
 4            Now, I mentioned that in addition to a maximum penalty
 5      of 20 years' imprisonment, there is also the possibility of
 6      three years' supervised release, and supervised release governs
 7      the period after you complete a term of imprisonment.
 8            So say you receive a prison term, followed by a term
 9      of three years' supervised release, and you live up to the
10      terms of supervised release for two years, but then you violate
11      one of the terms, you can be returned to prison for a full
12      period of three years.  Do you understand that, sir?
13            THE DEFENDANT:  Yes, I do.
14            THE COURT:  Are you a United States citizen?
15            THE DEFENDANT:  Yes, I am.
16            THE COURT:  One of the consequences of pleading guilty
17      is that you may give up other valuable civil rights, such as
18      the right to vote, to hold public office, to sit on a jury, to
19      possess a firearm, to hold certain licenses, to obtain certain
20      government benefits.  Do you understand all that?
21            THE DEFENDANT:  Yes, I do.
22            THE COURT:  Are you serving any other sentence, state
23      or federal, or being prosecuted in any other court for any
24      other crime?
25            THE DEFENDANT:  No.
```

1        MS. MIRON:  Your Honor, just one moment.

2        THE COURT:  Sure.

3             (Pause)

4        THE DEFENDANT:  Your Honor, there is one other thing

5   that I didn't think about as criminal, it's the tax evasion

6   charge like from the State, and I have to deal with them with

7   that.  I haven't negotiated anything with them yet, but that

8   will come in the future.

9        THE COURT:  All right.  The important thing for you to

10  understand, Mr. Re, is any punishment you receive from that

11  case is wholly separate and apart from any punishment you

12  receive in this case.

13       This Court will impose a sentence on you, and that

14  sentence will have nothing to do with the State Court sentence.

15  There will be no credit, no concurrent term or the like from

16  this court, and you should understand that.  Do you understand

17  that, sir?

18       THE DEFENDANT:  Yes.

19       THE COURT:  Okay.  In sentencing you, I will receive a

20  presentence report prepared by the Office of Probation that

21  gives me background information and a recommended range of

22  sentence under the sentencing guidelines.

23       After hearing from your lawyers and from the

24  government, I will make my own determination of the correct

25  guideline range that applies in this case.  Even after

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

BCLPREP
11

BCIRPEB

1    determining the correct guideline range, I need not follow it
2    and can sentence you all the way up to the statutory maximum.
3    The guidelines are advisory, and they are not binding
4    on the Court. They are one of the factors that the Court takes
5    account of under the sentencing statute, which is commonly
6    known as section 3553(a). Do you understand all that?
7    THE DEFENDANT: I understand what you're saying.
8    THE COURT: All right. And have you discussed how
9    sentencing works with your lawyers?
10   THE DEFENDANT: Yes, some. Somewhat, yes.
11   THE COURT: All right. Do you have any questions for
12   me on the sentencing process?
13   THE DEFENDANT: I don't know, your Honor. It's a lot
14   for me. I'm just trying to --
15   THE COURT: All right. Well, why don't we take a
16   five-minute recess, and you can discuss this with your lawyers.
17   And if you have any questions for me, I'd be pleased to answer
18   them. All right?
19   THE DEFENDANT: Thank you.
20   THE COURT: So let's take five minutes.
21   (Recess)
22   THE COURT: All right. Please be seated. We took a
23   little bit longer recess, but my question is now, Mr. Re, have
24   you had a chance to speak with your lawyers, and have you, in
25   fact, spoken with your lawyers on the subject of how sentencing

12

ECLRREP

```
 1   works?
 2               THE DEFENDANT:  Yes, I have.
 3               THE COURT:  All right.  Do you have any questions for
 4   me at this stage?
 5               THE DEFENDANT:  At this stage, no, your Honor.
 6               THE COURT:  All right.  If at any point today you have
 7   any questions for me, I would very much appreciate it if you
 8   would just tell me, and I will do my best to answer the
 9   question.
10               THE DEFENDANT:  Okay.
11               THE COURT:  All right.  Now, I understand there's been
12   a plea agreement between you and the government, and that it is
13   set forth in a six-page letter agreement on the letterhead of
14   the U.S. Department of Justice dated November 19, 2014, and
15   addressed to Annalisa Miron.  I'm going to ask the clerk to
16   place that document in front of you.  And the question is:  Is
17   that your plea agreement with the government?
18               THE DEFENDANT:  Yes.
19               THE COURT:  All right.  Is that your signature on the
20   last page?
21               THE DEFENDANT:  Yes.
22               THE COURT:  Did you read the plea agreement before you
23   signed it?
24               THE DEFENDANT:  I had read it earlier.
25               THE COURT:  Yes.  And did you discuss it with your
```

1     lawyer before you signed it?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Did you ask questions about it before you

4     signed it?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Did you understand it before you signed

7     it?

8          THE DEFENDANT:  Maybe not as well as a lawyer, but I

9     understood it in a layman's terms.

10          THE COURT:  All right.  Has anyone threatened you or

11     forced you in any way to enter into the plea agreement or to

12     plead guilty?

13          THE DEFENDANT:  No.

14          THE COURT:  Has anyone given you anything of value,

15     any inducements to enter into the plea agreement or to plead

16     guilty?

17          THE DEFENDANT:  No.

18          THE COURT:  Does the plea agreement contain all of

19     your understandings with the government?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  Let me ask Ms. Miron, if you

22     would kindly state for the record the review process.

23          MS. MIRON:  Yes, your Honor.  Mr. Re, who lives in

24     East Hampton came to our office last week.  We discussed the

25     plea agreement.  He read it.  I discussed it with him, reviewed

```
 1   the important provisions, asked if there were any questions.
 2   He did have some questions, and we answered those.  So I'm
 3   confident that he understands the provisions in the plea
 4   agreement.
 5            THE COURT:  Thank you.  I want you to know, Mr. Re,
 6   that any prediction, calculation or estimate that anyone has
 7   made to you, including your own lawyers, as to what sentence
 8   the Court may give you is not binding on the Court, and if it
 9   turns out to be wrong, you will not be permitted to withdraw
10   your guilty plea.  Do you understand that?
11            THE DEFENDANT:  Yes.
12            THE COURT:  Now, one of the features of your agreement
13   with the government is that you and the government have agreed
14   on a stipulated guideline range that applies in this case and,
15   indeed, that stipulated guideline range, insofar as it relates
16   to imprisonment, is a range of 37 months' to 46 months'
17   imprisonment.  Is that correct?
18            THE DEFENDANT:  To my knowledge, yes.
19            THE COURT:  All right.  That agreement is binding on
20   you and it's binding on the government, but it's not binding on
21   the Court.  As I said to you before, I have my own duty to
22   calculate the guidelines that apply in your case and even after
23   determining those guidelines, I need not follow them.  I can
24   sentence all the way up to the statutory maximum.
25            One of the features of your plea agreement with the
```

BCLPREP

16

    1    government is that if I should sentence you within the
    2    stipulated guideline range set forth in the plea agreement, 37
    3    to 46 months or above that range, the government has agreed not
    4    to appeal the sentence.  But you have agreed that if I sentence
    5    you to a term of 37 months' imprisonment or anything up to 46
    6    months' imprisonment, that you will -- or if I sentence you
    7    below that range, so if I sentence you to something less than
    8    37 months in prison, that you will not appeal or collaterally
    9    attack the sentence in any other proceeding.
   10            So in other words, you have waived your right to
   11    appeal a sentence, unless the sentence is more than 46 months'
   12    imprisonment, the imprisonment part is more than 46 months and,
   13    in that event, the law will only allow you to appeal on the
   14    basis that the sentence is unreasonable or contrary to law.  Do
   15    you understand all of that?
   16            THE DEFENDANT:  Yes, I do.
   17            THE COURT:  All right.  Do you have any questions
   18    about any of that?
   19            THE DEFENDANT:  No, sir.
   20            THE COURT:  Okay.  Now, I'm going to have the
   21    government attorney set forth the elements of the crime to
   22    which you have offered to plead guilty, and these are the
   23    elements that the government must prove beyond a reasonable
   24    doubt, and I will also ask the government to tell me how the
   25    government would go about proving the case.

ECSPREP

1    MR. ADAMS:  Your Honor, with respect to the elements
2    of wire fraud, there are three.  First, that there was a scheme
3    or artifice to defraud or to obtain money or property by
4    materially false and fraudulent pretenses, representations or
5    promises; second, that the defendant knowingly and willfully
6    participated in that scheme or artifice to defraud with
7    knowledge of its fraudulent nature and specific intent to
8    defraud; and, third, that in the execution of that scheme, the
9    defendant used or caused the use of interstate wires.
10        Were this case to go to trial, the nature of the
11   government's testimony and evidence would be as follows:
12   First, witness testimony regarding the Schulte household, that
13   is the household at which Mr. Re claims to have found a large
14   trove of purportedly very valuable paintings.  What we would
15   put on would be testimony from numerous witnesses, as well as
16   documents from the estate of George Schulte demonstrating that
17   no such paintings were ever in that house and that provenance
18   for those paintings was fabricated.
19        Second, and perhaps the most voluminous part of the
20   government's case, would be e-mail correspondence between
21   Mr. Re and others demonstrating, among other things, his
22   attempt to sell those paintings and such paintings using the
23   fabricated provenance, his attempt to have others engage in
24   what we would call shell bidding.  That is, to go onto online
25   auction sites and to raise the public price of these paintings

17

18

ECLPREP

1    by putting bids on the painting that the bidder had no
2    intention of actually paying for the purpose of increasing the
3    perception of value.
4         We would also be putting on e-mail evidence
5    demonstrating Mr. Re's repeated use of the false provenance.
6    We would put on the result of expert testing of approximately
7    of over 40 different Jackson Pollack paintings, which uniformly
8    came back negative, as well as recordings of Mr. Re and his
9    victims discussing those test results at a time before Mr. Re
10   ceased attempting to sell Jackson Pollacks using the same
11   provenance.  Thank you.
12        THE COURT:  Mr. Re, please tell me in your own words
13   what you did that leads you to believe that you are guilty of
14   the crime charged in Count One of the indictment?
15        THE DEFENDANT:  Yes, sir.  Sometime not too long
16   before 2005, I acquired artwork that I bought in a storage unit
17   in Manhattan.  I was not given any information as to the origin
18   of the artwork from the storage unit manager.  Being a
19   woodworker at the time, I had several people with expertise
20   view the artwork.  They told me that it was possibly attributed
21   to Jackson Pollack and William DeKooning.
22        Previous to that, I had been employed at a shop that
23   was previously owned by George Schulte before he had died in
24   1996, of East Hampton Springs, New York, who I thought possibly
25   knew Jackson Pollack in the late '40s and early '50s.  I

1  thought to represent to the buyers that the artwork came from
2  the George Schulte basement, being a feasible origin, even
3  though, in fact, it did not.  I knew the buyers would purchase
4  the artwork with more confidence having, given it a possible
5  provenance, that it had the possibilities of giving a
6  connection to the artist.
7          There were several buyers who purchased artwork
8  through eBay and PayPal, also.
9          Your Honor, I'm not going to sit here and claim that
10 making up the Schulte provenance was out of ignorance.  It was
11 out of arrogance, and my misconduct has brought shame to my
12 family and myself, and I hurt other people.  Mostly, I think
13 about the people that are angry that have spent money, and I
14 want to make it better.  I don't know if I can.  I don't expect
15 by saying that I'm sorry will make a difference.  However, in
16 my heart, I'm more than sorry.
17         Some of my family has not spoken to me since I've
18 gotten in trouble, and that has hurt me almost as deeply as the
19 people that bought the pieces.  I want to make it better.  I
20 even went so far as to, when I had the ability, I wanted to
21 give collector No. 1 back what he had paid, but he didn't want
22 to give the pieces back.  And I still want to try and do
23 whatever I can to take responsibility for what I did.
24         THE COURT:  Thank you, Mr. Re.  Let me hear from the
25 government on venue.

```
 1      MR. ADAMS:  Yes, your Honor.  Venue in this case is
 2   founded on a number of things, primarily, the location of
 3   several of the fraudulent artworks having come to Manhattan for
 4   inspection by various victims, or potential victims, as well as
 5   meetings between Mr. Re and potential victims that occurred in
 6   Manhattan.
 7      With respect to interstate wires and its connection to
 8   venue as well --
 9      THE COURT:  Yes.
10      MR. ADAMS:  -- Mr. Re caused wires to be sent from
11   Colorado and outside of New York to a representative of a
12   potential victim here in Manhattan in furtherance of the
13   scheme.
14      THE COURT:  All right.  Mr. Re, did you, in fact, meet
15   with one of the victims or potential victims in Manhattan in
16   connection with this criminal activity?
17      THE DEFENDANT:  Not that I recall, your Honor.
18      MS. MIRON:  Just one moment, your Honor.
19      THE COURT:  Yes.
20      MS. MIRON:  Just one moment.
21      THE COURT:  Take your time.
22               (Pause)
23      MS. MIRON:  Your Honor, I just had to clarify some
24   facts with the government, but yes, Mr. Re is prepared to talk
25   about the meeting.
```

1    THE DEFENDANT:  There was a meeting in Manhattan, but
2    it wasn't run by me, but it was concerning the Pollacks.
3    THE COURT:  Were you present during the meetings?
4    THE DEFENDANT:  The first meeting, no, I was not.
5    THE COURT:  Was there a second meeting?
6    THE DEFENDANT:  There was a second meeting done by
7    Steve Fisher Security's guy -- man, and I was present during
8    that meeting.
9    THE COURT:  All right.  And that was in Manhattan?
10   THE DEFENDANT:  Yes, I was there with Leo Mangan.
11   THE COURT:  All right.  And in connection with one of
12   the victims, did you cause an e-mail to be sent from someplace
13   in Colorado into New York regarding the transactions?
14   THE DEFENDANT:  Leo Mangan is from Colorado, and we
15   have e-mailed each other a lot.
16   THE COURT:  Okay.  And that was in
17   connection with this criminal scheme?
18   THE DEFENDANT:  Yes.
19   THE COURT:  All right.  Does the government agree
20   there's a sufficient factual predicate for a plea of guilty?
21   MR. ADAMS:  There is, Your Honor.  I do agree.  There
22   is one further relatively unusual provision in the plea
23   agreement that is a factual stipulation.  I believe that what
24   Mr. Re has allocuted to satisfies that portion of the plea
25   agreement as well, but I'd just like to put the stipulation in

22

1     the record to confirm that.

2          The stipulations are as follows, that at no time has

3     Mr. Re ever discovered or sold any work of art found in the

4     basement of the home formerly belonging to George and Barbara

5     Schulte; and that he knowingly and fraudulently fabricated the

6     provenance for every work of art for which he claimed that the

7     provenance included prior ownership by George or Barbara

8     Schulte.  Thank you, your Honor.

9          THE COURT:  Mr. Re, those statements that the

10    government prosecutor just read, are they correct?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And do you agree to them?

13         THE DEFENDANT:  Yes.

14         THE COURT:  All right.  Does defense counsel agree

15    that there's a sufficient factual predicate for a plea of

16    guilty in this case?

17         MS. MIRON:  Yes.

18         THE COURT:  Does defense counsel agree that there is a

19    basis for venue in this case?

20         MS. MIRON:  Yes.

21         THE COURT:  Does defense counsel agree that the

22    interstate wire requirement is satisfied in this case and the

23    interstate commerce requirement?

24         MS. MIRON:  Yes.

25         THE COURT:  All right.  Mr. Re, do you have any

ECLPREP

```
 1   questions for me?
 2            THE DEFENDANT:  No, sir.
 3            THE COURT:  With regard to the charge in Count One of
 4   the indictment, how do you plead, guilty or not guilty?
 5            THE DEFENDANT:  Guilty.
 6            THE COURT:  With regard to the forfeiture allegations
 7   in paragraphs 2 and 3 of the indictment, do you admit those
 8   allegations, or do you deny those allegations?
 9            THE DEFENDANT:  I admit them.
10            THE COURT:  Based upon your responses to my questions
11   and my observations of your demeanor, I find that you know your
12   rights, you know the consequences of pleading guilty, and
13   there's a factual basis for your plea of guilty.  Your plea of
14   guilty and your admission of the forfeiture allegations are
15   accepted.
16            Further, I find that the plea agreement was knowingly
17   and voluntarily entered into, and specifically that you
18   knowingly and voluntarily entered into the waiver provision
19   which waives your right to appeal or collaterally attack a
20   sentence under certain circumstances.
21            I will order a presentence investigation and report
22   and direct that no interview of you take place unless your
23   lawyer is present.  It's important you be candid and truthful
24   with the people who prepare the presentence report.  Tell them
25   the good things and the not-so-good things.  The report will be
```

23

ECIPREP

1   important in my decision on sentencing.

2         Before the day of sentencing, you will have the

3   opportunity to review the report.  I urge you to go through it

4   carefully.  If there are any mistakes, point them out to your

5   lawyer so that she can point them out to me.  Sentencing in

6   this case is set for April 10th, 2015, at 2:00 p.m.  Any

7   objection to bail continuing until sentencing?

8         MR. ADAMS:  No objection, your Honor.

9         THE COURT:  All right.  Mr. Re, you must be present

10  for sentencing on April 10th, 2015, at 2:00 p.m. or any adjourn

11  date of the sentencing, or you will be guilty of a separate

12  crime, bail jumping, and subject to imprisonment for up to five

13  years and a $250,000 fine, in addition to any punishment that

14  you would receive for the crime for which you've just pled

15  guilty.  Do you understand that, sir?

16        THE DEFENDANT:  Yes.

17        THE COURT:  All right.  Anything further from the

18  government?

19        MR. ADAMS:  No, your Honor.  Thank you.

20        THE COURT:  From the defendant?

21        MS. MIRON:  No, your Honor.  Thank you.

22        THE COURT:  Thank you all very much.

23                    (Adjourned)

24

25