April 28, 2015

**Via Hand Delivery**
Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearly Street
New York, New York 10007

    Re:    United States v. John Re
            14 Cr. 550-01 (PKC)

Shortly before John Re began selling artwork attributed to Willem de Kooning and Jackson Pollock, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ abstinent from illegal drugs, and full of shame for the pain he caused the victims of the offense. Letter of John Re, Ex. C. He will turn fifty-five years old the day he is sentenced, May 12, 2015. He has been married to the same woman, Rhonda Re, for over thirty years. The couple has two daughters, Amanda and Alexia Re, and an infant grandchild. They have lived with Mr. Re's mother, Gloria Re, primarily in the same modest family home since the early 1980s. Mr. Re's father, Charles Re, Jr., shared the home until his death in 2011.

Mr. Re is a woodworker, furniture restorer, musician, builder and amateur artist. PSR at ¶¶ 109-117. He is not a sophisticated art dealer. His conduct was not driven by malice. As

1

explained below, his attempts to sell purported Jackson Pollock or Willem de Koonig artwork for as little as $1,000 on eBay were a reflection of terrible judgment ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬ Time served and a three-year period of supervised release along with home detention would be the right sentence in this case, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ while paying back restitution and caring for his family.



Instead, in 1995, Mr. Re was sentenced to serve a nine-month period of incarceration in Suffolk County Jail for engaging in the misdemeanor offense of aggravated harassment. PSR at ¶¶ 55-56. He had earlier served nine months for acting irrationally when he was let go from a department store. PSR at ¶ 55. The second nine-month sentence was imposed for calling a department store employee to ask her on a date, being "upset" and hanging up on her when she refused. PSR at ¶ 56.

Shortly after serving his misdemeanor sentence, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, Mr. Re was convicted of the only felony on his prior record - Attempted Possession of a Forged Instrument in the First Degree. PSR at ¶ 57. He served a little less than two years in state prison for knowingly possessing fake $20 bills. This offense

---

[1]SUNY Stonybrook records are not attached here, but can be made available should the Court require them.

results in three criminal history points even though it was committed in 1995, nearly twenty years ago. Id. He was successfully discharged from parole in 2000.

Shortly after he completed parole, 

**Offense Conduct**

John Re became an art dealer. He sold a variety of paintings and drawings on eBay and over e-mail. He proclaimed some as "authentic" and cited reports where certain art experts said they were authentic. When confronted with expert reports finding they were not authentic, Mr. Re got angry and frustrated and in some instances, cursed the buyers. In another instance, when confronted with a negative report, he felt very "sorry" and desperately offered to write an "IOU" for a refund or arrange for another sale of the painting.

 While he donated a lot of money to the homeless in Manhattan, see Ex. E, most of his expenditures were a waste. Similarly, his engagement in the art world was foolish and wrong.

It does not take away from Mr. Re's acceptance of responsibility to point out that the buyers, themselves, made foolhardy investments in the artwork. It is hard to imagine that the buyers of this artwork were truly tricked into thinking they had lucked into a treasure trove of very cheap Jackson Pollocks. More likely, they anticipated re-selling the artwork for a higher price. They bought the artwork with the understanding that there was a risk involved – a risk that the paintings and drawings, advertised on eBay for pennies on the dollar, were, in fact, inauthentic.

Needless to say, the victims should be re-paid for their losses. John Re is the first to acknowledge that. See Letter of John Re, Ex. C. But his conduct is not like other frauds in the art world. It is distinguishable, for example, from the sophisticated conduct in United States v. James Meyer, 13 Cr. 604 (JPO), where the defendant stole from his employer, the artist Jasper

Johns, for six years and then sold the stolen, unfinished work to the tune of 13 million dollars. Mr. Meyer was recently sentenced to serve eighteen months in prison. Mr. Re's conduct is distinguishable from the fraud allegations against Glafira Rosales, who is accused of selling sixty-three paintings for over 33 million dollars to two art galleries. Memorandum of Law in Support of Application for Detention, United States v. Glafira Rosales, 13 Mj. 1324, at 3 (Dkt. 4). Ms. Rosales was a high-end art dealer whose million dollar sales - some involving purported Jackson Pollocks - had been the subject of "international news stories in publications like *The New York Times, Wall St. Journal,* and *Vanity Fair*." Id. The galleries re-sold the paintings for eighty million dollars. USAO Press Release, Art Dealer Pleads Guilty in Manhattan, Sep. 16, 2013, available at http://www.justice.gov/usao/nys/pressreleases/September13/RosalesGlafira PleaPR.phpWilliam.

In addition to the difference in sheer economic scope and sophistication of fraud ████ ████████████████████████████████████████████████████████████████ ██████ His offense is truly unique, and his sentence should be crafted particularly to address it. A sentence of time served followed by three years of supervised release, with special conditions of home detention, ████████████████████████████████████, and community service, is appropriate. Mr. Re will agree to pay full restitution.

**Guidelines Analysis**

The parties stipulated in the plea agreement that Mr. Re's 1995 conviction is the only conviction that carries criminal history points. Further, the parties agreed that Mr. Re falls into Criminal History Category II, with an advisory guidelines range of 37 to 46 months in prison. PSR at ¶ 130. Nevertheless, the Probation Officer finds that he falls into Category III because of a 2007 Class C misdemeanor plea. This plea was taken in Mr. Re's absence and without his participation or signature. Texas v. John Re, No. 259498, Court Records, Ex. I (court records signed by attorney in Mr. Re's absence). Because reliance on the Texas misdemeanor conviction would be unfair and unjust, the Court should find that Mr. Re properly falls into Criminal History Category II.

The 2007 misdemeanor conviction in Texas should be excluded from Mr. Re's criminal history because the record fails to establish any guilt, as required by the Guidelines. See U.S.S.G. § 4A1.2(a)(4) ("'Convicted of an offense,' for the purposes of this provision, means that the guilt of the defendant has been established . . . ."). Simply put, there is no record John Re allocuted to any facts establishing guilt. See Ex. I. [2] At the time Mr. Re's attorney signed the plea of nolo contendere, Mr. Re received no formal process. He neither signed any documents nor appeared in open court for the plea. He did not receive any admonishment from the court as to the potential consequences of his plea; he was given no warning that his plea to a class C misdemeanor could have such a profound impact on any future criminal sentence.

---

[2] The Galveston court informed our investigator that the 2007 proceeding was not transcribed.

4

The Probation Office justifies the assessment of criminal history points in part because a $100 fine was paid, presumably as an acknowledgment of guilt. PSR at p. 25. But the payment demonstrates nothing beyond the fact that a fine was paid by *someone*. Our office has been in contact with Mr. Re's former attorney, Miles Wittington, of Galveston, Texas. Mr. Wittington reports that John Re's file was destroyed during a hurricane. He has no recollection of the case but reports that it is common for attorneys to enter Class C misdemeanors in the absence of the client. He further stated that it is common for the attorney to pay an outstanding fine on behalf of the client. Thus, the fact that the fine was paid on his behalf is no indication that Mr. Re understood he was pleading guilty.

Even if the Court finds that the PSR accurately attributes a criminal history point to the 2007 misdemeanor plea, the Court has discretion to grant a downward departure under Section 4A1.3(b) of the Sentencing Guidelines to the stipulated range of 37 to 46 months. Alternatively, applying the factors in 18 U.S.C. § 3553(a), the Court can find that the longer term of imprisonment triggered by the additional criminal history point is simply not warranted in this case. The Second Circuit has observed that sentencing courts should look to the prior sentences and time served on those sentences by the defendant when considering whether the criminal history category is excessive and resulting in an improper disparity. See United States v. Mishoe, 241 F.3d 214, 220 (2d Cir. 2001). Mr. Re served no jail time for the Texas misdemeanor plea. The Criminal History Category enhancement in the PSR substantially over-represents his criminal conduct, and a longer sentence is neither necessary nor warranted as a deterrent. As stated in the Sentencing Guidelines, "[T]he *nature* of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record." U.S.S.G. § 4A1.3 cmt. 2(B).

John Re's criminal history is limited. His only prior felony conviction is from nearly twenty years ago. The Court should find that John Re falls into Criminal History Category II and that his advisory guidelines range is 37 to 46 months in prison.

**Appropriateness of Supervised Release**

Regardless of the guidelines range, the appropriate sentence in this case is one that does not involve incarceration. Such a sentence would promote public safety because John Re performs well under supervision. For example, once Mr. Re was released from prison in 1997, he was placed on state parole. By all accounts he performed very well, prompting his parole officer to recommend early discharge. PSR at ¶ 59. According to his parole officer, Mr. Re regularly reported, maintained employment as a restorer of antique furniture and paintings, and sustained no new arrests. Id. He was granted an early discharge in October 2000.

Moreover, since his arrest last summer on this case, Mr. Re has been fully compliant with his conditions of pretrial, including abstaining from the use of any illegal drugs. PSR at ¶ 100 ("Mr. Re has tested negative for illicit drugs on all urinalyses administered while on pretrial supervision.").

5

If sentenced to time served and a term of supervised release, our office, working closely with Probation, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Moreover, if sentenced to time served and supervised release, ███████████████████ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Finally, he would be there for his mother, to support her in his father's absence. PSR at ¶ 87. It is apparent from their letters that John Re's family members gravely depend on his presence in their home.

**Conclusion**

In conclusion, John Re has lived a difficult and complicated life. ████████████ ████████████████████████████████████████████████████████████████████████████████ He is full of remorse and shame for his conduct. A sentence involving supervised release, home detention, ██████████████████████ would reflect the seriousness of the conduct and the need for deterrence, all the while providing for the maximum opportunity for rehabilitation and restitution.

Respectfully submitted,

Annalisa Mirón, Esq.
Assistant Federal Defender
212-417-8780

cc: AUSA Andrew Adams
(via E-Mail and Hand Delivery)

Mr. John Re
(via Mail)

---

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████